**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HALO OPTICAL PRODUCTS, INC.; and**
**HALO SPORTS AND SAFETY, INC.,**

                              **Plaintiffs/Counter Defendants,**

    **vs.**

                                   **6:14-cv-00282**
                                   **(MAD/TWD)**

**LIBERTY SPORT, INC.,** _formerly known as_
**LIBERTY OPTICAL MANUFACTURING**
**COMPANY, INC.,**

                              **Defendant/Counter Claimant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**MCNAMEE, LOCHNER, TITUS &**           **G. KIMBALL WILLIAMS, ESQ.**
**WILLIAMS, P.C.**
677 Broadway
Albany, New York 12207-2503
Attorneys for Plaintiffs/Counter Defendants

**WHEELER, TRIGG LAW FIRM**            **CAROLYN J. FAIRLESS, ESQ.**
370 Seventeenth Street                 **GWEN J. YOUNG, ESQ.**
Suite 4500
Denver, Colorado 80202
Attorneys for Defendant/Counter Claimant

**O'CONNELL & ARONOWITZ, P.C**          **JEFFREY J. SHERRIN, ESQ.**
Albany Office
54 State Street, 9th Floor
Albany, New York 12207-2501
Attorneys for Defendant/Counter Claimant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Halo Optical Products, Inc. and Halo Sports and Safety, Inc. (collectively

"Halo") commenced this action on March 13, 2014, alleging trademark infringement and breach

of contract by Defendant Liberty Sports, Inc. ("Liberty").  *See* Dkt. No. 1.  In a

Memorandum-Decision and Order dated June 24, 2014 (the "June 24 Order"), this Court granted

Halo's motion for a preliminary injunction.  *See* Dkt. No. 34.  On July 23, 2014, this Court denied

Liberty's motion for modification of the preliminary injunction to require security from Halo.  *See*

Dkt. No. 45.  On March 5, 2015, this Court likewise denied Liberty's motion for reconsideration

of the preliminary injunction order.  *See* Dkt. No. 71.

Currently before the Court is Liberty's motion for partial summary judgment, which Halo

opposes.  *See* Dkt. Nos. 87, 92, 97.

## II. BACKGROUND

### A.    The June 24 Order

The Court assumes the parties' familiarity with the background of this case, as detailed in

the June 24 Order.  *See* Dkt. No. 34.

### B.    Liberty's Motion for Partial Summary Judgment

Liberty's stated purpose of its instant motion is for "dismissal of that portion of [Halo's]

prayer for relief that seeks to permanently enjoin Liberty from terminating its agreements with

[Halo] and thereafter manufacturing and selling sports protective eyewear that does not use Halo's

trademark or the jointly patented components."  Dkt. No. 87 at 1.  The specific portion of Halo's

claim for relief that is the subject of this motion states:

> That defendant, and any other persons acting in concert with
> defendant, be preliminarily and permanently enjoined and
> restrained:
> * * *
> ii.  from selling or marketing any sports protective eyewear
> (including but not limited to defendant's F8 COLLECTION or
> SPORTS SPECS) which compete with REC SPECS eyewear other

> than in accordance with the parties' 2006 Memorandum of Understanding.

Dkt. No. 1 at 16; Dkt. No. 97 at 8. Liberty asserts that granting the instant motion would require the Court to conclude "that the parties' 1993 License Agreement is terminable." Dkt. No. 87-1 at 5.

Halo's opposition argues that "Liberty does not seek to dismiss any claim or defense, or part of a claim or defense, asserted by Halo." Dkt. No. 92 at 12. Rather, Halo characterizes Liberty's motion as a request for declaratory relief, which cannot be granted without Liberty first filing an appropriate pleading for such relief. *See id.* at 13-14.

## III. DISCUSSION

### A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Further, "disputes over irrelevant facts must not be allowed to obscure the lack of a material dispute[.]" *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 923 (2d Cir. 1985) (citation omitted).

**B.    Scope of the Instant Motion**

*1. Declaratory Relief*

An action for declaratory judgment enables the court to decide disputes between parties having adverse legal interests when there is a substantial controversy that has not yet resulted in a violation of one of the parties rights.  *See Storms v. United States*, No. 13-CV-811, 2015 WL 1196592, *20 (E.D.N.Y. Mar. 16, 2015) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 826 (1969)).  A court "may declare the rights and other legal relations of any interested party seeking such declaration" only after the party has filed "an appropriate pleading." 28 U.S.C. § 2201(a).  Therefore, since an "action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment."  *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (citation omitted).

Halo contends that Liberty's motion must be denied because it should have been brought as a separate action for declaratory relief.  *See* Dkt. No. 92 at 12-18.  This argument is founded upon Liberty's statement in its memorandum of law requesting "to obtain a ruling from the Court that the parties' 1993 License Agreement is terminable and, therefore, Liberty cannot be permanently enjoined" from selling competing eyewear.  Dkt. No. 87-1 at 5.  The Court agrees that Liberty's request for a ruling that the 1993 agreement is terminable is an improper request for declaratory relief presented in the form of a motion for summary judgment.  *See Int'l Bhd. of Teamsters*, 160 F.R.D. at 456 ("Insofar as [defendant] seek[s] a motion for a declaratory judgment, [defendant's] motion is denied because such a motion is inconsistent with the Federal

Rules").[1]  Despite Liberty's improper request for declaratory relief, this error does not in itself

doom the motion because, as discussed below, the Court need not declare whether the 1993

agreement is terminable in order to rule on the merits of the instant motion.

### 2. Partial Summary Judgment

"[S]ummary judgment may be requested not only as to an entire case but also as to a

claim, defense, or part of a claim or defense."  FED. R. CIV. P. 56(a) advisory committee's note to

2010 amendment.  Summary judgment may also be granted against any part of the remedy sought

by the opposing party's claims.  *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307

(E.D.N.Y. 2010).

Halo's assertion that Liberty's motion seeks to dismiss "neither a claim nor a defense

asserted by Halo, but part of Halo's prayer for relief on the claims it has asserted" does not

prevent the Court from ruling on the instant motion.  Dkt. No. 90 at ¶ 1.  In considering Liberty's

instant motion, the Court clarifies that the scope of its decision is limited to evaluating whether

there are any genuine questions of fact surrounding Halo's requested relief for a permanent

injunction.

## C.    Merits of the Motion

### 1. Purpose of a Permanent Injunction

---

[1] To the extent that Liberty intends to file an appropriate pleading seeking a declaration that the 1993 agreement is terminable, the Court notes that such a determination would likely not present a justiciable "case or controversy" in light of Liberty's repeated assertion that it has no intention of terminating the agreement.  *See* Dkt. No. 87-5 at ¶ 12; Dkt. No. 90-5 at 3; Dkt. No. 87-2 at ¶ 10; *see also Gilbert, Segal & Young v. Bank of Montreal*, 785 F. Supp. 453, 459-62 (S.D.N.Y. 1992) (citing *American Mach. & Metals v. De Bothezat Impeller Co.*, 166 F.2d 535 (2d Cir. 1948)) (holding that a case or controversy exists if one party shows a "desire or intent" to terminate a contract, but not if it is merely considering the option of termination at some indeterminate point in the future).

The arguments presented in Liberty's motion are premised upon an incorrect interpretation that a permanent injunction is one that will always remain in effect, curtailing its ability to sell protective eyewear in perpetuity. Liberty characterizes the impact of the permanent injunction sought by Halo as one that would "bar Liberty forever, into perpetuity, from selling any sports protective eyewear that competes with REC SPECS products, even after the current agreements are terminated and even if the future products Liberty pursues do not use the parties' jointly patented design." Dkt. No. 97 at 4.

Contrary to Liberty's proposed reading of the requested relief, a permanent injunction is merely "[a]n injunction granted after a final hearing on the merits. Despite its name, a permanent injunction does not necessarily last forever." *Permanent Injunction*, Black's Law Dictionary (10th ed. 2014). "Thus, the term 'permanent' does not mean irrevocable in perpetuity," and the court may revoke or modify the terms of an injunction in light of a change in circumstances between the parties. *Patterson v. Newspaper and Mail Deliverers' Union*, 797 F. Supp. 1174, 1184 (S.D.N.Y. 1992) ("The Injunction which we sustain is 'permanent' only for the temporary period for which it may last. It is justified only by [the circumstances] that induced it and only so long as it counteracts [those circumstances]. Familiar equity procedure assures opportunity for modifying or vacating an injunction when its continuance is no longer warranted" (quoting *Milk Wagon Drivers Union, Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 298, 61 S. Ct. 552, 557, 85 L. Ed. 836 (1941)). Accordingly, the imposition of a permanent injunction would not mandate the conclusion, as Liberty argues, that the 1993 agreement cannot ever be terminated. Rather, such injunction, although labeled "permanent," would last only so long as the parties'

relationship with one another made it equitable to keep the injunction in place.[2]  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984).

### 2. Permanent Injunction Standard

A court may grant a permanent injunction if a plaintiff demonstrates the following four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as money damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 28 F. Supp. 3d 193, 214-15 (S.D.N.Y. 2014) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits [for a preliminary injunction] rather than actual success [for a permanent injunction]").

### a. Irreparable Injury

The "serious dilution in trademark value" that arises when a competitor continuously infringes on a registered mark can establish an irreparable injury.  *Or Da Indus., Ltd. v. Leisure Learning Prods., Inc.*, 479 F. Supp. 710, 719 (S.D.N.Y. 1979) (citing *Hills Bros. Coffee, Inc. v.*

---

[2] As both parties agree "that the 1993 Agreement will cease when Liberty ceases to aggressively promote and market REC SPECS brand products," Dkt. No. 97 at 12 n.9, any permanent injunction ultimately granted in this case would recognize this means of termination, *i.e.* Liberty may be permanently enjoined from selling competing eyewear so long as it continues to promote and market REC SPECS.

*Hills Supermarkets, Inc.*, 428 F.2d 379, 381 (2d Cir. 1970)).  Moreover, a showing of confusion between trademarked and competing goods can constitute an irreparable injury.  *See Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011).  While lost profits resulting from the breach of a distributorship agreement does not necessarily constitute an irreparable injury, such loss of business may be an irreparable injury if it would essentially doom the existence of the non-breaching company.  *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995).

Liberty has failed to prove that Halo will not suffer an irreparable injury absent a permanent injunction.  While it is unclear what percentage of Halo's profits are derived from its REC SPECS licensing agreement with Liberty, it is likely that Halo would struggle to maintain its business if Liberty continued to ignore its responsibilities under the agreement by refusing to provide any payment for its sale of REC SPECS products.  Moreover, Liberty has failed to present any compelling argument that there will be no confusion between the REC SPECS and competing products if it were allowed to continue selling its products in the allegedly improper manner that gave rise to this suit.  Significantly, nothing in this respect has changed since the June 24 Order pointed out that "labeling a product with the REC SPECS mark that was its competitor days before, and developed for sale at Wal-Mart, without permitting Halo the opportunity to ensure that they meet its quality standards, creates a significant risk of irreparable harm to the reputation of the company."  Dkt. No. 34 at 29.

### b. Inadequate Remedies at Law

A permanent injunction is appropriate in a trademark infringement action if the violator has shown a repeated disregard for following the requirements of the trademark laws.  *See A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, No. 96Civ.9721, 2005 WL 147364, *5-7 (S.D.N.Y. Jan. 24, 2005).  Moreover, the wrongful termination of a longstanding distributorship agreement may

not be compensable by ordinary remedies. *See Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of N.Y., Inc.*, 749 F.2d 124, 125-26 (2d Cir. 1984) (holding that the loss of a distributorship agreement that had developed over eleven years "cannot be fully compensated by subsequent monetary damages").

Prior to granting a preliminary injunction in this case, Liberty was selling sports eyewear that competed with REC SPECS and its website blurred the distinction between REC SPECS and non-REC SPECS protective glasses. *See* Dkt. No. 5-2 at ¶¶ 26-31; Dkt. No. 90-8. While Liberty ceased its allegedly infringing activities after the June 24 Order, the Court cannot be certain that Liberty will not resume the same infringing actions after the culmination of this lawsuit. Moreover, Liberty and Halo have built their current business relationship throughout thirty years of collaboration, such that it would be unlikely that any amount of money damages could fully compensate Halo in the event that the licensing agreement is wrongfully terminated.

### c. Balance of Hardships and Public Interest

So long as any permanent injunction is "crafted so as not to interfere with [the infringer's] legitimate conduct, the balance of hardships strongly favors [the copyright holder]. '[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product.'" *HarperCollins Publishers LLC v. Open Road Integrated Media, LLP*, 58 F. Supp. 3d 380, 386 (S.D.N.Y. 2014) (quoting *WPIX, Inc. v. iviv, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012)). Further, "injunctive relief does not disserve the public interest. Indeed, it is a premise of copyright law that 'the public has a compelling interest in protecting copyright owners' marketable rights to their work.'" *Id.* (quoting *WPIX, Inc.*, 691 F.3d at 287). Accordingly, Liberty has failed to prove that both the balance of hardships and the public interest will tip decidedly in its favor if an appropriately-tailored permanent injunction is ultimately granted.

The Court concludes that, in light of granting Halo's request for a preliminary injunction seeking essentially the same scope of relief as sought by the permanent injunction, *see* Dkt. No. 34, coupled with the lack of any change in circumstances since that decision, Liberty has failed to carry its burden of establishing that there is no genuine issue as to any material fact which would entitle it to summary judgment.[3]

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Liberty's motion for partial summary judgment (Dkt. No. 87) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 22, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] The Court clarifies that this decision does not conclude that Halo will ultimately be granted a permanent injunction after the merits of this case have been decided.